BRYAN SCHRODER
United States Attorney

CHARISSE ARCE
MICHAEL HEYMAN
Assistant United States Attorneys
Federal Building & U.S. Courthouse
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: Charisse.Arce@usdoj.gov
        Michael.Heyman@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:20-cr-00085-TMB-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | **PLEA AGREEMENT** |
| vs. | ) | |
| | ) | |
| FORREST NICHOLAS WRIGHT, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**Unless the parties jointly inform the Court in writing of
any additional agreements, this document in its entirety
contains the terms of the plea agreement between the
defendant and the United States. This agreement is
limited to the District of Alaska; it does not bind other
federal, state, or local prosecuting authorities.**

## I. SUMMARY OF AGREEMENT, FEDERAL RULE OF CRIMINAL PROCEDURE 11

### A. Summary of Agreement

The defendant, FORREST NICHOLAS WRIGHT, agrees to plead guilty to the following count(s) of the Indictment in this case: Count 1 – Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; Counts 2-17 – Wire Fraud, in violation of 18 U.S.C. § 1343; Count 18 – Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957(a); Counts 19-34 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957(a) and 2; and the Criminal Forfeiture Allegation in violation of 18 U.S.C. §§ 981(a)(1)(c), 982(a)(1), and 28 U.S.C. § 2461(c). The United States agrees not to prosecute the defendant further for any other offense related to the event(s) that resulted in the charge(s) contained in the Indictment. The parties agree that the Court shall impose a restitution order in the amount of $7,125,270.00, as set forth in Section II(E). The government will recommend a sentence at the low end of the guideline range.

The defendant will waive all rights to appeal the conviction(s) and sentence imposed under this agreement. The defendant will also waive all rights to collaterally attack the conviction(s) and sentence, except on the grounds of ineffective assistance of counsel or the voluntariness of the plea(s).

### B. Federal Rule of Criminal Procedure 11

Unless the parties otherwise inform the Court in writing, Federal Rule of Criminal Procedure 11(c)(1)(B) will control this plea agreement. Thus, the defendant may not

Case 3:20-cr-00085-TMB-DMS   Document 45   Filed 03/03/21   Page 2 of 32

withdraw from this agreement or the guilty plea(s) if the Court rejects the parties'

sentencing recommendations at the sentencing hearing.

## II. CHARGES, ELEMENTS, FACTUAL BASIS, STATUTORY PENALTIES AND OTHER MATTERS AFFECTING SENTENCE

### A. Charges

1. **The defendant agrees to plead guilty to the following count(s) of the Indictment:**

Count 1: Conspiracy to Commit Wire Fraud, a violation of 18 U.S.C. § 1349

Counts 2-17: Wire Fraud, a violation of 18 U.S.C. § 1343

Count 18: Conspiracy to Commit Money Laundering, a violation of 18 U.S.C. § 1956(h) and 1957(a)

Counts 19-34: Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, a violation of 18 U.S.C. §§ 1957(a) and 2.

### B. Elements

The elements of the charge in Count 1, Conspiracy to Commit Wire Fraud, a

violation of 18 U.S.C. § 1349, to which the defendant is pleading guilty are as follows:

1. Beginning on or about February 26, 2019, and ending on or about December 12, 2019, there was an agreement between two or more persons to commit at least one crime of wire fraud as charged in the indictment; and

2. The defendant became a member of the conspiracy knowing of at least one of its objects and intending to help accomplish it.

The elements of the charges in Counts 2-17, Wire Fraud, a violation of 18 U.S.C. § 1343, to which the defendant is pleading guilty are as follows:

1. The defendant knowingly devised a scheme or plan to defraud, or a scheme or plan for obtaining money or property by means of false or fraudulent pretenses, representations, or promises, or omitted facts;

2. The statements made or facts omitted as part of the scheme were material; that is, they had a natural tendency to influence, or were capable of influencing, a person to part with money or property;

3. The defendant acted with the intent to defraud, that is, the intent to deceive and cheat; and

4. The defendant used, or caused to be used, an interstate wire communication to carry out or attempt to carry out an essential part of the scheme.

   A wiring is caused when one knows that a wire will be used in the ordinary course of business or when one can reasonably foresee such use.

   It need not have been reasonably foreseeable to the defendant that the wire communication would be interstate in nature. Rather, it must have been reasonably foreseeable to the defendant that some wire communication would occur in furtherance of the scheme, and an interstate wire communication must have actually occurred in furtherance of the scheme.

The elements of the charge in Count 18, Conspiracy to Commit Money Laundering, a violation of 18 U.S.C. §§ 1956(h) and 1957(a) to which the defendant is pleading guilty are as follows:

1. Beginning in or about February 26, 2019, and continuing until on or about December 12, 2019, there was an agreement between two or more persons to commit at least one crime of money laundering as charged in the indictment; and

2. The defendant became a member of the conspiracy knowing its object and intending to help accomplish it.

The elements of the charges in Count 19-34, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, a violation of 18 U.S.C. §§ 1957(a) and 2 to which the defendant is pleading guilty are as follows:

1. The defendant knowingly engaged or attempted to engage in a monetary transaction;

2. The defendant knew the transaction(s) involved criminally derived property;

3. The property had a value greater than $10,000;

4. The property was, in fact, derived from a specified unlawful activity, that is, wire fraud; and

5. The transaction(s) occurred in the United States.

## C.    Factual Basis

The defendant admits the truth of the allegations in Counts 1-34 of the Indictment and the truth of the following statements, and the parties stipulate that the Court may rely upon these statements to support the factual basis for the guilty plea(s) and for the imposition of the sentence.

### General Admissions

From February 2019 to December 2019, defendant, FORREST NICHOLAS WRIGHT, knowingly and intentionally devised and executed two separate schemes in the district of Alaska and elsewhere to defraud Victim Business in violation of 18 U.S.C. § 1343. Defendant then laundered the proceeds of that unlawful activity in violation of 18 U.S.C. § 1957(a). Defendant conspired with Nathan Michael Keays ("Keays") and others in committing these acts in violation of 18 U.S.C. §§ 1349 and 1956(h).

### The First Scheme to Defraud

From on or about February 26, 2019, through on or about December 12, 2019, within the District of Alaska and elsewhere, defendant knowingly and intentionally devised and participated in a scheme with Keays to fraudulently obtain money from Victim Business by means of materially false and fraudulent representations and promises, and by concealment of material facts. Defendant used, or caused to be used, interstate wire communications to carry out or attempt to carry out the scheme.

Specifically, Victim Business employed defendant as a Senior Drilling and Wells Planner in Alaska. Defendant was responsible for ordering material and labor for Victim Business' drilling and wells program. In his position as Senior Drilling and Wells

Planner, defendant had the ability to propose suppliers to become "approved vendors" for Victim Business. Only approved vendors could sell materials and provide services to Victim Business. Defendant capitalized on this situation by agreeing and coordinating with Keays, owner of Eco Edge Armoring, LLC ("Eco Edge"), an Alaska entity, to devise a scheme to deceive and cheat Victim Business by obtaining fraudulent vendor approval status for Eco Edge and then utilizing Eco Edge to submit fraudulent invoices for goods and services.

In furtherance of this scheme, defendant and Keays committed a number of overt acts, including making materially false representations to Victim Business that Eco Edge was an experienced oil and gas industry company to obtain approval for Eco Edge to supply goods and services to Victim Business. For example:

a. On or about February 26, 2019, defendant submitted a New Vendor Set-Up Approval form for Eco Edge to be approved as a vendor to Victim Business and submitted fraudulent information to obtain such approval. In the form, defendant falsely claimed Eco Edge had a provisional patent on a trial rig mat.

b. Beginning on or about February 28, 2019, and continuing through on or about December 2019, defendant coordinated with Keays to create industry specific content for Keays to use in emails later sent to Victim Business. In order to effectuate the scheme and hide their roles in it, defendant and Keays used their personal email accounts to fabricate the industry specific content which was then used in the supposed business emails. For example, on or about March 1, 2019, defendant used a fraudulent email purportedly from Eco Edge as an attachment to

justify a labor contract award to Eco Edge for pipe inspection work at the Fairbanks Railroad yard.

c. On or about March 10, 2019, defendant and Keays coordinated via their personal email accounts to create materially false information for publication on Eco Edge's business website to convey to Victim Business and the public that it was a legitimate oil and gas industry company.

The defendant admits the government can prove that had Victim Business been aware of the truth that Eco Edge had no experience in the oil and gas industry and had no ability or intent to supply goods and services, Victim Business would not have approved Eco Edge as a vendor.

Once Victim Business approved Eco Edge as a vendor, defendant, in agreement and coordination with Keays, then used Eco Edge's fraudulently obtained status to submit fictitious invoices to Victim Business for services that were not performed and for materials that did not exist, such as drilling pipes and pit liners, and for pipe inspection work. For example, on or about September 12, 2019, after Eco Edge submitted a fictitious invoice, defendant requested Victim Business employees to approve the invoices by falsely representing that the materials were accounted for, when in truth and fact, the materials did not exist. Specifically, defendant emailed one Victim Business employee stating, "I wrote the Reqs [requisitions] so am unable to approve, any help with moving them forward would be appreciated. It's a small company so I know they struggle paying folks."

The defendant admits the government can prove that as payment for this and other fraudulent invoices, Victim Business sent electronic payments from its JPMorgan Chase Bank, N.A. business bank account, through interstate commerce outside of Alaska, to Eco Edge's Alaska USA Federal Credit Union's bank account within Alaska under the control of Keays.

The defendant admits the government can prove that between April 2019 and October 2019, Victim Business paid Eco Edge approximately $3,087,720 for the non-existent "materials" and "work" described in the fraudulent invoices when no materials existed and no work was ever performed.

The defendant admits the government can prove that had Victim Business known the truth regarding the fraudulent invoices, Victim Business would not have paid the invoices.

Keays sent approximately 50 percent of the fraudulent proceeds from the Eco Edge business bank account to the business bank account of Spectrum Consulting Services ("Spectrum"), an Alaska entity owned and controlled by defendant.

### The Second Scheme to Defraud

Beginning in or about February 2019, and continuing through December 2019, in the District of Alaska and elsewhere, the defendant and others devised and participated in a material scheme and artifice to defraud Victim Business of additional monies through another entity, DB Oilfield Support Services ("DB Oilfield").

Specifically, defendant falsely represented to Victim Business that DB Oilfield was an experienced oil and gas industry company to obtain approval for DB Oilfield to

*U.S. v. Forrest Nicholas Wright*
3:20-cr-00085-TMB-DMS             Page 9 of 32

supply goods to Victim Business. Defendant then used DB Oilfield's fraudulently obtained status as an approved vendor to submit fraudulent invoices to Victim Business for materials that were never delivered and did not exist. Victim Business paid approximately $4,148,000 as payment on these fraudulent invoices. The money obtained by defendant from Victim Business through false and fraudulent pretenses, was shared with defendant for his personal use and benefit, including, but not limited to, paying personal expenses and purchasing real estate. In furtherance of this scheme, defendant committed the following acts:

a. On or about April 23, 2019, defendant registered DB Oilfield with the Alaska Department of Commerce, Community, and Economic Development and listed his then father-in-law, D.B. as the owner.

b. On or about April 23, 2019, defendant created an email account on behalf of DB Oilfield.

c. On or about April 27, 2019, defendant hired a contractor to create a business website for DB Oilfield, which contained materially false information to convey to Victim Business and the public it was a legitimate oil and gas industry company.

d. On or about April 24, 2019, defendant proposed DB Oilfield to be approved as a vendor to Victim Business and submitted fraudulent information to obtain such approval.

e. Defendant used the DB Oilfield email address to send emails to himself at his business email address, appearing to be in negotiations for nonexistent materials. For instance, on April 23, 2019, defendant emailed himself using the DB Oilfield

email address with a bid to provide an adjustable pipe rack for use at the Fairbanks Railroad yard. Subsequently, defendant used the fraudulent emails purportedly from DB Oilfield as attachments to justify contract awards to DB Oilfield.

f. DB Oilfield, through defendant and D.B., submitted approximately $4,148,000 in fraudulent invoices to Victim Business for materials that did not exist, such as pipe racks.

After receiving the fraudulent invoices, defendant requested Victim Business employees to approve the invoices by falsely representing that the materials were accounted for, when in truth and fact, defendant knew the materials did not exist.

The defendant admits the government can prove that Victim Business sent electronic payments for the fraudulent invoices from its JPMorgan Chase Bank, N.A. business account located outside Alaska to DB Oilfield's Alaska USA account in Alaska.

The defendant admits the government can prove that between June 2019 and September 2019, Victim Business paid DB Oilfield approximately $4,148,000 for the non-existent "materials" described in the fraudulent invoices.

The defendant admits the government can prove that had Victim Business known the truth regarding the fraudulent invoices, Victim Business would not have paid the invoices.

DB Oilfield sent approximately 90 percent of the fraudulent proceeds from the DB Oilfield business bank account, to Spectrum's bank account controlled by defendant.

## COUNT 1
## CONSPIRACY TO COMMIT WIRE FRAUD

From in or about February 2019 through in or about December 2019, within the District of Alaska and elsewhere, the defendant, as set forth above, knowingly and intentionally agreed and conspired with Keays and others to commit the crime of wire fraud by devising and executing a scheme and artifice to defraud Victim Business, and to obtain money and property from Victim Business by means of materially false and fraudulent representations and promises, and by concealment of material facts.

For the purpose of executing such scheme and artifice and attempting to do so, defendant and Keays committed the overt acts set forth above. The defendant willfully joined the conspiracy knowing of its object to commit the offense of wire fraud and intending to help accomplish it.

## COUNTS 2 - 12
## WIRE FRAUD

From in or about February 2019 through in or about December 2019, within the District of Alaska and elsewhere, defendant, as set forth above, did knowingly, and with intent to defraud, devise the scheme and artifice to defraud as to a material matter and to obtain money and property from Victim Business by means of materially false and fraudulent pretenses, representations, and promises, and by concealment of material facts. For the purpose of executing such scheme and artifice and attempting to do so, defendant caused to be transmitted, by means of wire communication in interstate commerce, the following writings, signs and signals:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION | AMOUNT |
|---|---|---|---|
| 2 | May 16, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $320,000 |
| 3 | May 19, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $974,473.50 |
| 4 | May 20, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $495,600 |
| 5 | May 27, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $98,430 |
| 6 | June 2, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $82,500 |
| 7 | June 2, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $99,300 |
| 8 | July 7, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $60,450 |
| 9 | July 7, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $60,450 |
| 10 | July 7, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $124,775 |
| 11 | October 2, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $66,300 |
| 12 | October 2, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to Eco Edge's Alaska USA account ending in 7951 | $64,325 |

WIRE FRAUD

From in or about April 2019 through in or about September 2019, in the District of

Alaska and elsewhere, defendant, as set forth above, did knowingly, and with intent to

defraud, devise a scheme and artifice to defraud as to a material matter and to obtain

money and property from Victim Business by means of materially false and fraudulent

pretenses, representations, and promises, and by concealment of material facts.  For the

purpose of executing such scheme and artifice and attempting to do so, defendant caused

to be transmitted, by means of wire communications in interstate commerce, the

following writings, signs and signals:

| COUNT | DATE | DESCRIPTION OF WIRE COMMUNICATION | AMOUNT |
|---|---|---|---|
| 13 | June 16, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to DB Oilfield's Alaska USA account ending in 5982 | $990,000 |
| 14 | June 16, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to DB Oilfield's Alaska USA account | $990,000 |
| 15 | June 23, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to DB Oilfield's Alaska USA account ending in 5982 | $990,000 |
| 16 | July 8, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to DB Oilfield's Alaska USA account ending in 5982 | $462,000 |
| 17 | September 24, 2019 | Wire Transfer from Victim Business' JP Morgan Chase account ending in 8448 to DB Oilfield's Alaska USA account ending in 5982 | $716,000 |

/ /

/ /

*U.S. v. Forrest Nicholas Wright*
3:20-cr-00085-TMB-DMS                    Page 14 of 32

<u>COUNT 18</u>
CONSPIRACY TO COMMIT MONEY LAUNDERING

From on or about February 26, 2019, through on or about December 12, 2019, in the District of Alaska and elsewhere, defendant, as set forth above, knowingly and intentionally agreed and conspired with Keays and others to commit the crime of money laundering by engaging in monetary transactions within the United States that he knew, and in fact did, involve property with a value of more than $10,000 derived from wire fraud.

In furtherance of that conspiracy, defendant and Keays committed the overt acts set forth above. The defendant became a member of that conspiracy knowing of its object to commit the offense of money laundering and intending to help accomplish it.

<u>COUNTS 19 - 29</u>
MONEY LAUNDERING

From in or about May 2019 through October 2019, in the District of Alaska and elsewhere, defendant knowingly engaged in numerous monetary transactions involving criminally derived property with a value exceeding $10,000 that affected interstate commerce.

In particular, as set forth above, once Victim Business paid Eco Edge for the fraudulent invoices, Keays wrote checks in varying amounts from the Eco Edge Alaska USA Federal Credit Union bank account ending in 7951 made payable to Spectrum. Upon receipt, defendant caused those checks to be deposited into Spectrum's Alaska USA Federal Credit Union bank account ending in 0183 as follows:

| COUNT | DATE | MONETARY TRANSACTION |
|-------|------|----------------------|
| 19 | May 24, 2019 | Check #1104 in the amount of $160,000 |
| 20 | May 24, 2019 | Check #1105 in the amount of $487,236.75 |
| 21 | May 24, 2019 | Check #1106 in the amount of $247,800 |
| 22 | May 29, 2019 | Check #1108 in the amount of $49,215 |
| 23 | June 5, 2019 | Check #1109 in the amount of $49,650 |
| 24 | June 5, 2019 | Check #1110 in the amount of $41,250 |
| 25 | June 13, 2019 | Check #1114 in the amount of $120,000 |
| 26 | June 13, 2019 | Check #1115 in the amount of $80,000 |
| 27 | July 9, 2019 | Check #1121 in the amount of $60,450 |
| 28 | July 9, 2019 | Check #1118 in the amount of $62,375.50 |
| 29 | October 4, 2019 | Check #1129 in the amount of $65,312.50 |

The proceeds described above were derived from the wire fraud relating to Victim Business and, at the time of the transactions, defendant knew that the transactions involved criminally derived property from that wire fraud.

COUNTS 30-34
MONEY LAUNDERING

From in or about June 2019 through September 2019, in the District of Alaska and elsewhere, defendant knowingly engaged in numerous monetary transactions involving criminally derived property with a value exceeding $10,000 that affected interstate commerce.

In particular, as set forth above, once Victim Business paid DB Oilfield for the fraudulent invoices, D.B. wrote checks from the DB Oilfield Alaska USA Federal Credit Union bank account ending in 5982 payable to Spectrum Consulting Services. Upon receipt, defendant caused the checks to be deposited into Spectrum's Alaska USA Federal Credit Union bank account ending in 0183 as follows:

| COUNT | DATE | MONETARY TRANSACTION |
|---|---|---|
| 30 | June 17, 2019 | Check #46 in amount of $891,000 |
| 31 | June 19, 2019 | Check #47 in the amount of $891,000 |
| 32 | June 25, 2019 | Check #48 in the amount of $891,000 |
| 33 | July 9, 2019 | Check #49 in the amount of $415,800 |
| 34 | September 27, 2019 | Check #52 in the amount of $644,400 |

The proceeds described above were derived from the wire fraud relating to Victim Business and, at the time of the transactions, defendant knew that the transactions involved criminally derived property from that wire fraud.

**D.    Statutory Penalties and Other Matters Affecting Sentence**

**1.    Statutory Penalties**

The maximum statutory penalties applicable to the charges to which the defendant is pleading guilty, based on the facts to which the defendant will admit in support of the guilty plea(s), are as follows:

Count 1: 18 U.S.C. § 1349 (Conspiracy to Commit Wire Fraud)

1) 20 years' imprisonment;

2) a $250,000 fine;

3) a $100 mandatory special assessment; and

4) three years of supervised release.

Counts 2-17: 18 U.S.C. § 1343 (Wire Fraud)

5) 20 years' imprisonment;

6) a $250,00 fine;

7) a $100 mandatory special assessment; and

8) three years of supervised release.

Count 18: 18 U.S.C. § 1956(h) (Money Laundering Conspiracy)

1) 10 years' imprisonment;

2) a $250,000 fine, or twice the money laundered, whichever is greater;

3) a $100 mandatory special assessment; and

4) three years of supervised release.

Counts 19-34: 18 U.S.C. §§ 1957(a) and 2 (Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity)

1) 10 years' imprisonment;

2) a $250,000 fine, or twice the money laundered, whichever is greater;

3) a $100 mandatory special assessment; and

4) three years of supervised release.

## 2. Other Matters Affecting Sentence

### a. Conditions Affecting the Defendant's Sentence

The following conditions may also apply and affect the defendant's sentence: 1) pursuant to Comment 7 of U.S.S.G. § 5E1.2, the Court may impose an additional fine to pay the costs to the government of any imprisonment and supervised release term; 2) pursuant to 18 U.S.C.§ 3612(f), unless otherwise ordered, if the Court imposes a fine of more than $2,500, interest will be charged on the balance not paid within 15 days after the judgment date; 3) upon violating any condition of supervised release, a further term of imprisonment equal to the period of the supervised release may be imposed, with no credit for the time already spent on supervised release; 4) the Court may order the

*U.S. v. Forrest Nicholas Wright*
3:20-cr-00085-TMB-DMS          Page 18 of 32

defendant to pay restitution pursuant to the 18 U.S.C. § 3663 and U.S.S.G. § 5E1.1, and if 18 U.S.C. § 3663A (mandatory restitution for certain crimes) applies, the Court shall order the defendant to pay restitution.

### b.     Payment of Special Assessment

The parties will jointly recommend that defendant pay a special assessment in the amount of $100 per felony county conviction, for a total of $3,400, to be paid forthwith the day the Court imposes the sentence. All payments will be by check or money order, and are to be delivered to the Clerk of Court, United States District Court, 222 W. 7th Ave. Box 4, Rm. 229, Anchorage, AK 99513-7564.

### c.     Consequences of Felony Conviction

Any person convicted of a federal felony offense may lose or be denied federal benefits including any grants, loans, licenses, food stamps, welfare or other forms of public assistance, as well as the right to own or possess any firearms, the right to vote, the right to hold public office, and the right to sit on a jury. If applicable, any defendant who is not a United States citizen may be subject to deportation from the United States following conviction for a criminal offense, be denied citizenship, and not permitted to return to the United States unless the defendant specifically receives the prior approval of the United States Attorney General. In some circumstances, upon conviction for a criminal offense, any defendant who is a naturalized United States citizen may suffer adverse immigration consequences, including but not limited to possible denaturalization.

### E.     Restitution

The defendant agrees that the Court will order restitution to Victim Business in the amount of $7,125,270.00. The parties further agree to request that the restitution order reflect $5,517,845.67 in credit for the amounts recovered by Victim Business after discovering the fraud, plus any additional credit amounts that the Court deems applicable.

### F.     Fine

The parties will not recommend imposition of a fine to ensure that defendant uses his financial resources to pay restitution to the Victim Business in this case.

### G.     Forfeiture

Defendant admits the Criminal Forfeiture Allegations of the Indictment in their entirety, and that any property constituting, or derived from, proceeds obtained, directly or indirectly, as a result of the offense(s) of conviction, pursuant to 18 U.S.C. § 982(a)(2)(A), including property seized in any civil actions against Defendant related to the above-desecribed conduct is subject to forfeiture to the United States.

Defendant agrees not to file a claim or withdraw any claim already filed to any of the above-described property in any forfeiture proceeding, administrative or judicial, which has been or may be initiated by the United States. If applicable, Defendant further waives the right to notice of any forfeiture proceeding involving this property, agrees not to assist others in filing a claim to said property in any forfeiture proceeding, and will take all steps as requested by the United States to pass clear title to the above-described property to the United States, including but not limited to, executing documents and testifying truthfully in any forfeiture proceeding. Defendant further agrees to cooperate to

ensure that assets subject to forfeiture are not sold, disbursed, wasted, hidden, or otherwise made unavailable for forfeiture.

Defendant understands and acknowledges that the United States is relying upon the Defendant's truthful asset forfeiture disclosure and cooperation in entering into this plea agreement. If Defendant fails to cooperate or is untruthful in this regard, the United States may declare a material breach of this plea agreement.

The defendant further waives all constitutional, statutory, procedural, appellate, habeas corpus, and equitable challenges in any manner against any federal, state, local government regarding the seizure, custody, forfeiture, or disposition of the property listed in the above paragraph, to include that the property listed above is an excessive fine. The defendant agrees to the immediate entry of any orders concerning the forfeiture or other disposition of the property listed in the above paragraph.

### H.    Voluntary Abandonment

Personal property to be voluntarily abandoned under this agreement include the items seized in the civil action against Defendant relating the conduct described above. The defendant warrants that the defendant had sole possession and ownership of the property, and that there are no claims to, or liens or encumbrances on the property referenced above.  If applicable, Defendant will take all steps as requested by the United States to pass clear title to the property, including but not limited to, executing documents, and testifying truthfully in any legal proceeding. The defendant agrees to forever abandon and disclaim any right, title, and interest the defendant may have in the

property described above, and warrant to the Court free, clear and unencumbered title to the aforelisted property.

## III. ADVISORY UNITED STATES SENTENCING GUIDELINES, GUIDELINE APPLICATION AGREEMENTS, SENTENCING RECOMMENDATIONS

### A. Advisory United States Sentencing Guidelines

The Court must consult the advisory United States Sentencing Commission Guidelines [U.S.S.G.] as well as the factors set forth in 18 U.S.C. § 3553(a) when considering the sentence to impose. The U.S.S.G. do not establish the statutory maximum or minimum sentence applicable to the offense(s) to which the defendant is pleading guilty. The U.S.S.G. are not mandatory and the Court is not bound to impose a sentence recommended by the U.S.S.G.

### B. Guideline Application Agreements

The parties have no agreements on any guideline applications unless set forth below in this section.

#### 1. Acceptance of Responsibility

If the United States concludes that the defendant has satisfied the criteria set out in U.S.S.G. § 3E1.1 and the applicable application notes, the United States agrees to recommend the defendant for a two level downward adjustment for acceptance of responsibility and, if U.S.S.G. § 3E1.1(b) applies, to move for the additional one level adjustment for acceptance of responsibility. If, at any time prior to imposition of the sentence, the United States concludes that the defendant has failed to fully satisfy the criteria set out in U.S.S.G. § 3E1.1, or has acted in a manner inconsistent with acceptance

of responsibility, the United States will not make or, if already made, will withdraw this recommendation and motion.

### 2. U.S.S.G. § 3B1.1(c)

Although not binding on the Probation Office or the Court, the United States and the defendant agree they will jointly recommend that the Role Adjustment under U.S.S.G. § 3B1.1(c) should not apply.

### 3. U.S.S.G. § 2B1.1(b)(1)

The United States and the defendant agree the loss amount for purposes of U.S.S.G. § 2B1.1(b)(1) is $7,125,270.00.

### C. Sentencing Recommendations

The United States Probation Office will prepare the defendant's pre-sentence report in which it will include a recommended calculation of the defendant's sentence range under the U.S.S.G. Both the United States and the defendant will have the opportunity to argue in support of or in opposition to the guideline sentence range calculation the U.S.P.O. recommends, as well as present evidence in support of their respective sentencing arguments.

The government will recommend a sentence at the low end of the guideline range. The parties are free to recommend to the Court their respective positions on the appropriate sentence to be imposed in this case based on the stipulated facts set forth in Section II(C), any additional facts established at the imposition of sentence hearing, the applicable statutory penalty sections, the advisory U.S.S.G., and the sentencing factors set forth in 18 U.S.C. § 3553.

## IV.  ADDITIONAL AGREEMENTS BY UNITED STATES

In exchange for the defendant's guilty plea(s) and the Court's acceptance of the defendant's plea(s) and the terms of this agreement, the United States agrees that it will not prosecute the defendant further for any other offense – now known – arising out of the subject of the investigation related to the charges brought in the Indictment in this case and the defendant's admissions set forth in Section II(C).

Provided, however, if the defendant's guilty plea(s) or sentence is/are rejected, withdrawn, vacated, reversed, set aside, or modified, at any time, in any proceeding, for any reason, the United States will be free to prosecute the defendant on all charges arising out of the investigation of this case including any charges dismissed pursuant to the terms of this agreement, which charges will be automatically reinstated as well as for perjury and false statements.  The defendant hereby agrees that he/she waives any defense that the statute of limitations bars the prosecution of such a reinstated charge.

## V.  WAIVER OF TRIAL RIGHTS, APPELLATE RIGHTS, COLLATERAL ATTACK RIGHTS, CLAIM FOR ATTORNEY FEES AND COSTS, AND RULE 410

### A.  Trial Rights

Being aware of the following, the defendant waives these trial rights:

- If pleading to an Information, the right to have the charges presented to the grand jury prior to entering the guilty plea;

- The right to a speedy and public trial by jury on the factual issues establishing guilt or any fact affecting the mandatory minimum and

statutory penalties, and any issue affecting any interest in any assets subject to forfeiture;

- The right to object to the composition of the grand or trial jury;

- The right to plead not guilty or to persist in that plea if it has already been made;

- The right to be presumed innocent and not to suffer any criminal penalty unless and until the defendant's guilt is established beyond a reasonable doubt;

- The right to be represented by counsel at trial and if necessary to have a counsel appointed at public expense to represent the defendant at trial – the defendant is not waiving the right to have counsel continue to represent the defendant during the sentencing phase of this case;

- The right to confront and cross examine witnesses against the defendant, and the right to subpoena witnesses to appear in the defendant's behalf;

- The right to remain silent at trial, with such silence not to be used against the defendant, and the right to testify in the defendant's own behalf; and

- The right to contest the validity of any searches conducted on the defendant's property or person.

## B. Appellate Rights

The defendant waives the right to appeal the conviction(s) resulting from the entry of guilty plea(s) to the charges set forth in this agreement. The defendant further agrees that if the Court imposes a sentence that does not exceed the statutory maximum penalties – as set forth in Section II(D) above in this agreement, the defendant waives without exception the right to appeal on all grounds contained in 18 U.S.C. § 3742 the sentence the Court imposes. The defendant understands that this waiver includes, but is not limited to, forfeiture (if applicable), terms or conditions of probation (if applicable) or supervised release, any fines or restitution, and any and all constitutional (or legal) challenges to defendant's conviction(s) and guilty plea[s], including arguments that the statute(s) to which defendant is pleading guilty (is/are) unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's plea[s] of guilty.

The defendant agrees that the appellate and collateral attack waivers contained within this agreement will apply to any 18 U.S.C. § 3582(c) modifications, as well as the district court's decision to deny any such modification.

Should the defendant file a notice of appeal in violation of this agreement, it will constitute a material breach of the agreement. The government is free to reinstate any dismissed charges, and withdraw any motions for downward departures, or sentences below the mandatory minimum made pursuant to 18 U.S.C. § 3553(e).

### C. Collateral Attack Rights

The defendant agrees to waive all rights to collaterally attack the resulting conviction(s) and/or sentence – including forfeiture (if applicable) or terms or conditions of probation (if applicable) or supervised release, and any fines or restitution – the Court imposes. The only exceptions to this collateral attack waiver are as follows: 1) any challenge to the conviction or sentence alleging ineffective assistance of counsel – based on information not now known to the defendant and which, in the exercise of reasonable diligence, could not be known by the defendant at the time the Court imposes sentence; and 2) a challenge to the voluntariness of the defendant's guilty plea(s).

### D. Claim for Attorney Fees and Costs

Because this is a negotiated resolution of the case, the parties waive any claim for the award of attorney fees and costs from the other party.

### E. Evidence Rule 410 and Fed. R. Crim. P. 11(f)

By signing this agreement, the defendant admits the truth of the facts in the Factual Basis portion of this agreement set forth in Section II(C). The defendant agrees that the statements made by him in signing this agreement shall be deemed usable and admissible against the defendant as stipulations in any hearing, trial or sentencing that may follow. The foregoing provision acts as a modification, and express waiver, of Federal Rule of Evidence 410 and Federal Rule of Criminal Procedure 11(f), and is effective upon the defendant's in-court admission to the factual basis supporting the plea(s). This provision applies regardless of whether the court accepts this plea agreement.

*U.S. v. Forrest Nicholas Wright*

### F.  Potential Plea before Magistrate Judge

The defendant has the right to enter a plea before a United States District Court Judge. The Defendant, defense counsel, and the attorney for the Government consent to have the Defendant's plea(s) taken by a United States Magistrate Judge pursuant to Fed. R. Cr. P. 11 and 59. The parties understand that if the Magistrate Judge recommends that the plea(s) of guilty be accepted, a pre-sentence investigation report will be ordered pursuant to Fed. R. Crim. P. 32. The parties agree to file objections to the Magistrate Judge's Report and Recommendation within seven calendar days, thereby shortening the time for objections set forth in Fed. R. Crim. P. 59. The District Court Judge will decide whether to accept this plea agreement at the time it imposes sentence in the case. The defendant agrees that if the defendant is pleading guilty to an offense described in Title 18, United States Code, Section 3142(f)(1)(A), (B), or (C) (involving a crime of violence, a crime punishable by a maximum sentence of life or death, or a Title 21 controlled substance offense for which the maximum sentence is ten years or more), that the defendant will remand into custody on the day that he/she agrees in court to the factual basis supporting the plea. The defendant further agrees not to seek release at any time between the date of the guilty plea before the Magistrate Judge and the date of imposition of sentence before the District Court Judge.

## VI.  ADEQUACY OF THE AGREEMENT

Pursuant to Local Criminal Rule 11.2(d)(8), this plea agreement is appropriate in that it conforms with the sentencing goals that would otherwise be applicable to the

defendant's case if the defendant had gone to trial and had been convicted on all counts in the charging instrument.

## VII.  THE DEFENDANT'S ACCEPTANCE OF THE TERMS OF THIS PLEA AGREEMENT

I, Forrest Nicholas Defendant, the defendant, affirm this document contains all of the agreements made between me – with the assistance of my attorney – and the United States regarding my plea(s). There are no other promises, assurances, or agreements the United States has made or entered into with me that have affected my decision to enter any plea of guilty or to enter into this agreement. If there are any additional promises, assurances, or agreements, United States and I will jointly inform the Court in writing before I enter my guilty plea(s).

I understand that no one, including my attorney, can guarantee the outcome of my case or what sentence the Court may impose if I plead guilty. If anyone, including my attorney, has done or said anything other than what is contained in this agreement, I will inform the Court when I stand before it to enter my plea.

I enter into this agreement understanding and agreeing that the conditions set forth herein are obligatory and material to this agreement and that any failure on my part to fulfill these obligations will constitute a material breach of this agreement. If I breach this agreement, I agree the United States, in its sole discretion, may withdraw from this agreement and may reinstate prosecution against me on any charges arising out of the investigation in this matter. If my compliance with the terms of this plea agreement becomes an issue, at an appropriate hearing, during which I agree any of my disclosures

will be admissible, the Court will determine whether or not I have violated the terms of this agreement. I understand the government's burden to prove a breach will be by a preponderance of the evidence.

I understand the Court will ask me under an oath to answer questions about the offense(s) to which I am pleading guilty and my understanding of this plea agreement. I understand that I may be prosecuted if I make false statements or give false answers and may suffer other consequences set forth in this agreement.

I have read this plea agreement carefully and understand it thoroughly. I know of no reason why the Court should find me incompetent to enter into this agreement or to enter my plea(s). I enter into this agreement knowingly and voluntarily. I understand that anything that I discuss with my attorney is privileged and confidential, and cannot be revealed without my permission. Knowing this, I agree that this document will be filed with the Court.

I am fully satisfied with the representation given me by my attorney and am prepared to repeat this statement at the time I stand before the Court and enter my guilty plea(s). My attorney and I have discussed all possible defenses to the charge(s) to which I am pleading guilty. My attorney has investigated my case and followed up on any information and issues I have raised to my satisfaction. My attorney has taken the time to fully explain the legal and factual issues involved in my case to my satisfaction. We have discussed the statute(s) applicable to my offense and sentence as well as the possible effect the U.S.S.G. may have on my sentence.

Based on my complete understanding of this plea agreement, I therefore admit that I am guilty of Count 1 – Conspiracy to Commit Wire Fraud, in violation of 18 U.S.C. § 1349; Counts 2-17 – Wire Fraud, in violation of 18 U.S.C. § 1343; Count 18 – Conspiracy to Commit Money Laundering, in violation of 18 U.S.C. §§ 1956(h) and 1957(a); and Counts 19-34 – Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. §§ 1957(a) and 2 of the Indictment and admit the forfeiture allegation of the Indictment in their entirety.

DATED: 2-26-21

FORREST NICHOLAS DEFENDANT
Defendant

As counsel for the defendant, I have conveyed all formal plea offers. I have discussed the terms of this plea agreement with the defendant, have fully explained the charge(s) to which the defendant is pleading guilty, the necessary elements thereto, all possible defenses, and the consequences of a guilty plea to a felony. Based on these discussions, I have no reason to doubt that the defendant is knowingly and voluntarily entering into this agreement and entering a plea of guilty. I know of no reason to question the defendant's competence to make these decisions. If, prior to the imposition of sentence, I become aware of any reason to question the defendant's competency to enter into this plea agreement or to enter a plea of guilty, I will immediately inform the court.

DATED: 2.26.21

JANE IMHOLTE
Assistant Federal Defendant
Attorney for Forrest Nicholas Defendant

On behalf of the United States, the following accepts the defendant's offer to plead guilty under the terms of this plea agreement.

DATED: 03/01/2021

BRYAN SCHRODER
United States of America
United States Attorney